NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DOMINICK D. ROTANTE,

Plaintiff,

v.

FRANKLIN LAKES BOARD OF EDUCATION AND FRANK ROMANO III, individually and in his official capacity of Superintendent of the Franklin Lakes School District,

Defendants.

**OPINION**

Civil Action No. 13-3380 (JLL)

**JOSE L. LINARES, U.S.D.J.**:

This matter comes before the Court upon the following Motions: i) Motion to Dismiss by Defendant Frank Romano III ("Romano"); ii) Motion to Dismiss by Franklin Lakes Board of Education (the "Board"); iii) Cross-Motion for Leave to File a Notice of Claim by Plaintiff Dominick D. Rotante ("Plaintiff"); and iv) Motion to Amend/Correct Complaint by Plaintiff. Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. Based on the reasons that follow, Romano's Motion to Dismiss is **granted in part and denied in part**, the Board's Motion to Dismiss is **granted in part and denied in part**, Plaintiff's Cross-Motion for Leave to File a Notice of Claim is **denied**, and Plaintiff's Motion to Amend/Correct Complaint is **granted in part and denied in part**.

## I. BACKGROUND[1]

Plaintiff is the former Principal of the Woodside Avenue Elementary School ("Woodside") located in Franklin Lakes, New Jersey. Woodside is part of the Franklin Lakes School District (the "District"). Romano has been the Superintendent of the schools in the District since April 2010.

Immediately after Romano was hired, Plaintiff informed members of the Board during a meeting that Romano was denied for a position as Curriculum Director of the District about two years earlier. Plaintiff was then asked to attend another meeting with the Board. Plaintiff states that he understood that the purpose of the meeting was to discuss the reasons Romano was rejected for the Curriculum Director position. Plaintiff claims that he received confirmation from the Board that it would hold his comments as strictly confidential. Plaintiff states that he truthfully answered questions about Romano's prior candidacy for the Curriculum Director Position, and claims that these comments were later leaked by members of the Board to Romano.

Plaintiff states that during the summer of 2010, Romano used threats, intimidation, and deception to collect negative statements about Plaintiff from other teachers. Plaintiff claims that these teachers cooperated because they were "bullied," and that Romano later manipulated and broadcasted these statements to teachers, administrators, and Board members. Plaintiff also alleges that in January 2011, Romano forced the Middle School Principal to resign, and that immediately after, Romano stated to certain Board members that he was "also going to get rid of [Plaintiff]."

Plaintiff states that in February 2011, during a public meeting open to Franklin Lakes residents, Romano gave a presentation that included recommendations for redistricting. Plaintiff claims that these changes would have a negative impact on students and teachers, such as requiring students to walk across busy streets to attend their new schools. Plaintiff alleges that Romano

---

[1] The facts from this section are taken from the parties' pleadings.

found out that he was opposed to the redistricting plan, and thereafter began to increase his efforts in finding a way to get rid of Plaintiff.

By a memorandum dated June 29, 2012, Marie Warnke, Grievance Chair of the Union, sent Romano a "Level 2" grievance against Plaintiff (the "Grievance"), citing unprofessional conduct. Plaintiff claims that the Grievance contained allegations that were either false, obtained through threats and coercion, or otherwise exaggerated by Romano. Plaintiff asserts that Romano used trickery and deception to convince him that the Grievance was real.

Plaintiff states that Romano eventually convinced him that if he attempted to fight the Grievance, address the purported claims against him, or attempt to identify the names of his purported accusers, the Board would take legal action to have him fired for cause. Plaintiff claims that although these threats were false, he still believed the Grievance was real at that point in time.

In August 2012, Plaintiff and the Board executed a separation agreement, a resignation letter, and a release of claims (collectively the "Separation Agreement"). Plaintiff claims that he would not have entered into the Separation Agreement if he knew that the Grievance had been fabricated. Plaintiff also asserts that the Grievance Committee of the Union never approved the Grievance. He claims that after the execution of the Separation Agreement, he spoke to certain members of the Grievance Committee who stated that they were not aware of any grievance or the basis for any grievance against him, and who further confirmed that no vote or meeting ever took place.

Plaintiff filed a five-count Complaint in the Superior Court of New Jersey on March 20, 2013. Count one asserts a fraudulent inducement claim. Count two asserts a breach of contract claim. Count three asserts a tortious interference with contractual relations and prospective economic advantage claim. Count four asserts a claim for violation of the Tenure Employee's

Hearing Law, N.J.S.A. § 18A:6-10-1, et seq. Count five asserts a claim for retaliation under the First Amendment. On May 30, 2013, Romano removed the case to federal court (ECF No. 1).[2] The Board consented to this removal. Romano filed a Motion to Dismiss on June 18, 2013 (ECF No. 5). The Board filed a Motion to Dismiss on June 19, 2013 ("Bd. Mot.," ECF No. 6). Plaintiff filed a Cross-Motion for Leave to File a Notice of Claim on July 22, 2013 (ECF No. 10), and Plaintiff filed a Motion to Amend/Correct Complaint on December 10, 2013 (ECF No. 17).

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

## III. DISCUSSION

### A. Notice of Claim Requirement

Under the New Jersey Tort Claims Act ("TCA"), a plaintiff is barred from recovering

[2] This Court's jurisdiction is premised on 28 U.S.C. § 1331.

against a public entity or employee if he fails to file a notice of claim within ninety days of the claim's accrual. N.J.S.A. § 59:8-8. Romano asserts that counts one (fraud in the inducement), two (breach of contract), and three (tortious interference with contractual relations and prospective economic advantage) must be dismissed because Plaintiff did not file a notice of claim. The Board only argues that count one must be dismissed for this reason. In response, Plaintiff argues that a notice of claim is not necessary, that he substantially complied with the TCA's notice requirement, and, alternatively, Plaintiff moves for leave to file a notice of claim.

In count one of the Complaint, Plaintiff asks this Court to declare the Settlement Agreement void and to order the reinstatement of Plaintiff to his position as Principal of Woodside. Thus, as Plaintiff only seeks equitable relief, a notice of claim is not required, and this Court will address the merits of the claim below. See Blazer Corp. v. N.J. Sports & Exposition Auth., 480 A.2d 953, 957 (N.J. Super. Ct. Law Div. 1984) aff'd, 488 A.2d 1025 (N.J. Super. Ct. App. Div. 1985) ("It is probably not possible to define precisely the causes of action to which the Tort Claims Act is applicable, except to say that it does not apply to contract cases or cases in which purely equitable relief is sought."). With respect to count two, this claim is only asserted against the Board. Thus, because only Romano and not the Board argues that count two must be dismissed for failure to file a notice of claim, the Court will address the merits of count two below. Finally, with regards to count three, this Court finds that it must be barred for failure to file a notice of claim. This is not a claim in which purely equitable relief is sought, as Plaintiff also seeks compensatory and punitive damages. Further, this Court rejects Plaintiff's argument that he substantially complied with the TCA because his original complaint was served on Defendants within ninety days of the events that led to his separation. See Guzman v. City of Perth Amboy, 518 A.2d 758, 760 (N.J. Super. Ct. App. Div. 1986) (stating that "the filing of a complaint would not be a substitute for the notice

required by [the TCA]").

Finally, this Court denies Plaintiff's Cross-Motion to file a Notice of Claim, as Plaintiff has not shown that extraordinary circumstances exist as to why he failed to file a timely notice of claim. See Davis v. Twp. of Paulsboro, 371 F. Supp. 2d 611, 618 (D.N.J. 2005) (stating that pursuant to N.J.S.A. 59:8–9, a court may allow a party to file a late notice of claim "based on 'sufficient reasons constituting extraordinary circumstances'"). Plaintiff first argues that he should be permitted to file a late notice of claim because he did not realize that any of his claims were tort-based, and instead thought they all arose from contract law. In Tripo v. Robert Wood Johnson Med. Ctr., 845 F. Supp. 2d 621, 631 (D.N.J. 2012), one of the extraordinary circumstances alleged by the plaintiff was that he did not become aware that the defendants were state employees until after the time to file a notice of claim had passed. The Court rejected this argument, stating that "with the exercise of reasonable diligence, Plaintiff could have, and should have, discovered that [Defendants] were state employees, and, as a result, filed a timely Notice of Claim." Id. at 632. See also McDade v. Siazon, 208 N.J. 463, 477 (2011) (stating that the extraordinary circumstances inquiry "focuses on the diligence of the plaintiff in investigating the claim"). Similarly, in the present case, simple research on the law of tortious interference would have revealed to Plaintiff that his claim is a tort claim. Further, the name of the claim itself should have suggested to Plaintiff that his claim arises from tort law.

Plaintiff also contends that extraordinary circumstances exist because he had been undergoing "serious family problems" during the time that the notice of claim should have been filed. This vague statement, without any supporting facts, fails to show that Plaintiff was subjected to extraordinary circumstances. However, even with more detail, Plaintiff's argument would be futile. As Plaintiff himself pointed out, he was able to serve the Complaint within ninety days of

the accrual of his claims. Thus, regardless of the nature of Plaintiff's family problems, this Court rejects the argument that they prevented him from filing a timely notice of claim. Accordingly, count three of the Complaint is dismissed against both Defendants with prejudice.

**B. Fraudulent Inducement Claim**

Count one alleges that Defendants fraudulently induced Plaintiff to execute the Separation Agreement and resign from his position as Principal.

To state a claim for fraudulent misrepresentation or omission under New Jersey law,[3] a plaintiff must establish: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made. See, e.g., Frederico v. Home Depot, No. 05–5579, 2006

[3] The parties do not dispute that New Jersey law applies to Plaintiff's claims.

WL 624901, at *2 (D.N.J. Mar.10, 2006).

Here, Plaintiff's fraudulent inducement claim must be dismissed because he has not alleged, among other things, the existence of any particular material misrepresentation and defendants' knowledge of its falsity. First, while Plaintiff contends generally that the Grievance at issue was fabricated, he fails to allege any particular misrepresentations made by anyone acting on behalf of the Franklin Lakes Board of Education as it pertains to the allegedly false Grievance. Second, Plaintiff alleges that Romano "used deception and trickery to convince [him] that the Grievance was real" (Compl. ¶ 51). However, Plaintiff provides no details as to what specific misrepresentations Romano made in order to allegedly deceive and trick him. Instead, his Complaint repeats numerous conclusory statements such as "[Plaintiff] made [the decision to execute the Separation Agreement] based upon his understanding that the Grievance was real, based on what the Defendants presented to him" (Id. ¶ 35). These vague allegations fail to show that either Defendant made misrepresentations to Plaintiff that they knew were false. Finally, Plaintiff asserts that Romano falsely told him that if he attempted to fight the Grievance, he would be fired. However, Plaintiff's own conclusory assertion that this statement was untrue does not plausibly demonstrate that this statement was in fact false and that Romano knew it was false.

In short, count one fails to allege any specific misrepresentation(s) made by Romano or anyone in particular on behalf of the Franklin Lakes Board of Education, or when such alleged misrepresentations were made. Certainly, the Amended Complaint contains no *facts* suggesting that Romano or anyone acting on behalf of the Franklin Lakes Board of Education had knowledge of the falsity of any particular statements they made to the Plaintiff. In addition, Plaintiff has failed to plead the date, time and/or place of the alleged fraud by Romano or members of the Franklin Lakes Board of Education. Nor has Plaintiff otherwise injected some measure of substantiation

into his allegations of fraud as against either Defendant. Absent such factual content, Plaintiff's allegations of fraud are insufficient to pass muster under Rule 8(a), much less to meet Rule 9(b)'s heightened pleading standard. See generally Gennari, 148 N.J. at 610; Frederico, 507 F.3d at 200. Defendants' motion to dismiss this claim is therefore granted. Count one of Plaintiff's Complaint is dismissed *without* prejudice.

**(i) Related Claims Against the Board**

As stated above, Plaintiff's fraudulent inducement claim seeks to declare the Separation Agreement void. In this regard, the Board also argues that if Plaintiff's fraudulent inducement claim fails, all other claims asserted against the Board must fail due to the release of claims contained in the agreed upon Separation Agreement. The release of claims provision states:

> I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened up to now. . . .

(Bd. Mot. at Ex. C).[4] This Court agrees that the release of claims provision bars count five against the Board, as count five relates to conduct that occurred *prior* to the execution of the release of claims and therefore falls within the scope of the language "anything which has happened up to now." See Matter of Terminated Aetna Agents, 590 A.2d 1189, 1193 (N.J. Super. Ct. App. Div. 1990) ("A general release ordinarily covers all claims and demands due at the time of its execution

[4] A copy of the release of claims is not attached to Plaintiff's Complaint. However, because the Separation Agreement, which includes the release of claims, is relied on in the Complaint, this court can consider the copy of the release of claims provided by the Board. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that a district court can consider matters extraneous to the pleadings if a document is "*integral to or explicitly relied* upon in the complaint" (citation omitted)).

and within the contemplation of the parties."). Count Five is therefore dismissed *without* prejudice as to the Board.[5] However, counts two and four relate to conduct that occurred *after* the Separation Agreement was executed. Thus, they are not covered by the release of claims provision contained therein and may not dismissed on this basis.

**C. Breach of Contract Claim**

Count two alleges a breach of contract claim against the Board. "A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

Although Plaintiff alleges generally that "Romano and certain Board members have made statements about Rotante in violation of the confidentiality and non-interference provisions of the Separation Agreement," the Complaint provides no further insight into the specific terms of the confidentiality and/or non-interference provisions. For example, Plaintiff does not quote to those particular provisions, nor does Plaintiff provide the Court with any additional facts concerning the scope of those provisions that would allow the Court to draw the reasonable inference that Board member Jamie Martino breached said provisions by statements she made at the September 2012 public meeting. This becomes even more problematic given that the Complaint does not allege any facts about what Board member Jamie Martino actually said. (Compl., ¶ 64). Plaintiff's allegation that "Board member Jamie Martino made defamatory and slanderous statements about

[5] This claim is dismissed without prejudice because if Plaintiff can cure the deficiencies in count one and show that the Board fraudulently induced Plaintiff to enter into the Separation Agreement, the release of claims may no longer be applicable. Additionally, because Romano does not argue that the release of claims applies to him, this Court will address count five against Romano below.

Rotante and violated the confidentiality provisions of the Separation Agreement" is conclusory and replete with legal conclusions that do not benefit from the presumption of truth.

Plaintiff's vague allegations that "Romano and certain Board members have made public statements defaming and slandering Rotante" are equally deficient. (Compl. ¶ 62). Without knowing the nature of these statements, or the specific scope and/or terms of the confidentiality and/or non-interference provisions, this Court cannot draw the reasonable inference that the Board is liable for the misconduct alleged.

Finally, with respect to element four, the Board points to the fact that Plaintiff alleges that he learned the Grievance was false only after speaking to members of the Grievance Committee. Thus, according to the Board, Plaintiff has shown that he disregarded the same provisions of the Separation Agreement that he claims the Board violated. As stated above, Plaintiff has failed to allege sufficient facts as to the scope and terms of the confidentiality and/or non-interference provisions. Thus, the Court declines to consider this argument at this time. Defendant may reassert this argument in any future motion practice.

The Board's motion to dismiss count two is granted. Count two is hereby dismissed without prejudice.

**D. Violation of Tenure Employee's Hearing Law**

The Court has carefully reviewed Count four, considered the arguments raised in support of and in opposition to this Court and finds that this Count fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure inasmuch as it fails to provide Defendants with a short and plain statement of the claim. See, e.g., Iqbal, 556 U.S. at 677-678 ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . . . [A complaint does not] suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.' ") (citation omitted).

In particular, it is unclear if Plaintiff intends to assert a claim for violation of the Tenure Employees Hearing Law ("TEHL"), N.J.S.A. 18A:6-11, which provides that "[t]he consideration and actions of the board as to any charges shall not take place at a public meeting," or whether Plaintiff instead claims—in this count—that Defendants have violated the Open Public Meetings Act ("OPMA"), N.J.S.A. 10:4-12b. It is clear from the Defendants submissions that they have not been given proper notice of the nature of this particular claim and the specific grounds upon which it rests. This violates Rule 8(a) of the Federal Rules of Civil Procedure.

To the extent Plaintiff intends to assert claims pursuant to both TEHL and OPMA, Plaintiff shall amend the complaint to separate such claims into separate counts. Each count must include all facts pertinent to that particular claim and in support of Plaintiff's theory of the claim. Moreover, each count must contain sufficient factual matter which, if accepted as true, would allow this Court to draw the reasonable inference that *each* Defendant is liable for the specific misconduct alleged. See generally Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Generalized allegations that "Defendant[s] on various dates have publicly discussed the matters aforesaid mentioned at public meetings in violation of Plaintiff's privacy rights and the policy of confidentiality, which is required by statute governing tenure charges" do not suffice. This is particularly so given that Plaintiff does not allege that any tenure charges were filed against him.

Count Four is therefore dismissed in its entirety, without prejudice, for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure.

**E. First Amendment Claim**

Count five alleges that Romano violated the First Amendment by retaliating against Plaintiff for engaging in free speech concerning Romano's proposal for school redistricting.[6] To state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Romano first argues that Plaintiff did not engage in constitutionally protected conduct because his speech regarding Romano's proposal for redistricting fails the test set forth in Pickering v. Bd. of Educ., 391 U.S. 563 (1968). Under the Pickering test, courts "are required to balance the first amendment interest in protecting the employee's freedom of expression against the government's interest in maintaining discipline and efficiency in the workplace." McPherson v. Rankin, 786 F.2d 1233, 1236 (5th Cir. 1986) aff'd, 483 U.S. 378 (1987). Romano argues that Plaintiff's speech is not protected because it was disruptive and undermined the goal of his employer, citing to Roseman v. Indiana Univ. of Pa., 520 F.2d 1364 (3d Cir. 1975) to support this proposition. However, this case arose from a decision by the Western District of Pennsylvania that ruled in favor of a defendant on a motion for summary judgment, not a motion to dismiss. See generally Roseman v. Hassler, 382 F. Supp. 1328, 1329 (W.D. Pa. 1974) aff'd sub nom. Roseman v. Indiana Univ. of Pa., 520 F.2d 1364 (3d Cir. 1975). Further, the Supreme Court has expressly

---

[6] As discussed above, this claim is dismissed without prejudice as to the Board pursuant to the release of claims provision contained in the Separation Agreement. To the extent Plaintiff cures the pleading deficiencies in his fraudulent inducement claim, he may reassert this claim as against the Board.

stated that an analysis under Pickering is fact-sensitive. Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 678 (1996). Therefore, this Court finds that it is premature to dismiss Plaintiff's claim based on the Pickering test.[7]

Romano also argues that Plaintiff has not suffered a retaliatory action. This Court disagrees. To determine whether an action was retaliatory, courts must consider whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (citation omitted). Here, Plaintiff alleges that he was faced with two options: sign the Separation Agreement or be terminated. (Compl., ¶¶ 32-34). Being presented with this choice could have conceivably deterred him from exercising his free speech rights. As Plaintiff's allegations must be accepted as true at this time, this Court finds that he has alleged a retaliatory action. See, e.g., Thomas, 463 F.3d at 296 ("Although 'it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983,' construing the allegations in plaintiffs' favor, we conclude that plaintiffs have adequately pled First Amendment retaliation claims under the Free Speech and Petition Clauses."). Accordingly, count five is permitted to proceed against Romano. Defendant Romano's motion to dismiss this claim is denied.

### F. Motion to Amend Complaint

Plaintiff's Motion to Amend seeks to i) add the Franklin Lakes Education Association (the "FLEA") as a Defendant to counts one, three, and four; ii) add FLEA president Donna Luciano as

---

[7] This Court will not consider the argument raised for the first time in Romano's Reply Brief—that Plaintiff's speech should not be protected because Plaintiff engaged in the speech pursuant to his official duties—inasmuch as Plaintiff has not been given an opportunity to respond. See generally Laborers' Int'l Union v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994).

a Defendant to counts one and three; iii) add Board Member Christine Christopoul as a Defendant to counts one, three, and five; and iv) add a sixth count that states a cause of action under the New Jersey Civil Rights Act (the "NJCRA"), N.J.S.A. 10:6-1, *et seq*. against all Defendants. The Third Circuit "has often held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994) (quoting Bechtel v. Robinson, 886 F.2d 644, 652–53 (3d Cir.1989)). As Defendants do not argue that they will be prejudiced by the amendments or that Plaintiff acted in bad faith, this Court will address whether Plaintiff's amendments are futile.

Because the same deficiencies exist as to the FLEA, Luciano, and Christopoul for counts one and three as discussed above for Romano and the Board, this Court will not allow Plaintiff to assert counts one and three against the FLEA, Luciano, and Christopoul. [8] To the extent Plaintiff cures the pleading deficiencies in Count Four, he may assert such claim(s) against the FLEA. Plaintiff may also assert count five against Christopoul. Again, the Court reiterates that each claim must contain sufficient facts which, if accepted as true, allow the Court to draw the reasonable inference that ***each*** defendant is liable for the specific misconduct alleged.

Plaintiff's proposed sixth count seeks to add a cause of action under the NJCRA against all Defendants based upon their alleged violation of Plaintiff's right to freedom of speech. "[T]he free speech clause of the New Jersey Constitution is generally interpreted as coextensive with the First Amendment." Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 168 (3d Cir. 2008)

[8] However, because this Court is dismissing count one without prejudice, Plaintiff is entitled to assert count one against the FLEA, Luciano, and Christopoul in his amended complaint if he corrects its deficiencies.

(internal quotations and citation omitted). As discussed above, this Court is not dismissing Plaintiff's First Amendment claim in count five against Romano. As such, Plaintiff is permitted to file a freedom of speech claim under the NJCRA against Romano, Christopoul, Luciano, and the FLEA. However, as this Court is dismissing count five against the Board, Plaintiff is not permitted to assert count six against the Board.[9]

Plaintiff's proposed sixth count also seeks to add a claim under the NJCRA against all Defendants based upon their alleged violation of Plaintiff's substantive and procedural due process rights. While the New Jersey Constitution does not explicitly enumerate a right to due process, it provides that

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

N.J. Const. art. I, ¶ 1. To assert a violation of substantive due process under the New Jersey Constitution, a plaintiff must show that the particular right is fundamental. See Lewis v. Harris, 188 N.J. 415, 434 (2006). In Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 143 (3d Cir. 2000), the Third Circuit found that a continuing interest in public employment is not fundamental. As such, Plaintiff is not permitted to add a substantive due process claim under the NJCRA. Further, this Court will not allow Plaintiff to add a procedural due process claim, because the NJCRA "protects invasions of substantive due process, not procedural due process." Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 405 (D.N.J. 2011) (citing N.J.S.A. § 10:6–2 and New Jersey Assembly Floor Statement, A.B.2073, 6/24/2004).

[9] However, because count five is dismissed against the Board without prejudice, Plaintiff may allege count six against the Board in his amended complaint if he cures the deficiencies in count five.

## IV. CONCLUSION

For the foregoing reasons, Romano's Motion to Dismiss is **granted in part and denied in part**, the Board's Motion to Dismiss is **granted in part and denied in part**, Plaintiff's Cross-Motion for Leave to File a Notice of Claim is **denied**, and Plaintiff's Motion to Amend/Correct Complaint is **granted in part and denied in part**. In particular, Count one is dismissed *without* prejudice as to both Defendants. Count two is dismissed *without* prejudice as to the Board. Count three is dismissed *with* prejudice as to both Defendants. Count four is dismissed *without* prejudice as to both Defendants. Count five is dismissed *without* prejudice as to the Board. Count five may proceed against Romano.

Plaintiff may file an Amended Complaint **on or before May 9, 2014** to cure the pleading deficiencies and to include those particular amendments discussed above. Plaintiff's failure to do so may result in dismissal of counts one, two, four and five (as to the Board) with prejudice upon application by the Defendants.

An appropriate Order accompanies this Opinion.

Date: March 26, 2014

s/ Jose L. Linares
Jose L. Linares, U.S.D.J.