NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOMINICK D. ROTANTE, | Civil Action No. 13-3380 (JLL) (JAD) |
| Plaintiff, | |
| v. | **OPINION** |
| FRANKLIN LAKES BOARD OF EDUCATION, et al., | |
| Defendants. | |

**LINARES, District Judge.**

This matter comes before the Court upon the Motions of i) Frank Romano III ("Romano") (ECF No. 36); ii) the Franklin Lakes Board of Education (the "Board") (ECF No. 39); and iii) the Franklin Lakes Education Association (the "FLEA") and Donna Luciano (ECF No. 42) to Dismiss the Complaint of Plaintiff Dominick D. Rotante ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to Defendants' Motions, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. Based on the following and for the reasons expressed herein, Romano's Motion to Dismiss is **granted**, the Board's Motion to dismiss is **granted**, and the FLEA and Luciano's Motion is **granted in part and denied in part**.

**I.    BACKGROUND**

Plaintiff is the former Principal of the Woodside Avenue Elementary School ("Woodside") located in Franklin Lakes, New Jersey. ("Am. Compl." ECF No. 30, ¶ 2.) Woodside is part of the Franklin Lakes School District (the "District"). (Id.) Romano has been

the Superintendent of the schools in the District since April 2010. (Id. ¶ 10.)

Immediately after Romano was hired, during a Board meeting, Plaintiff informed Board Members that Romano was denied for a position as Curriculum Director of the District about two years earlier. (Id. ¶ 12.) After making this disclosure, Plaintiff was asked to attend another meeting with the Board, this time with Dr. John Caliso, Special Education Director, and Helen Attenello, another Principal within the District in attendance. (Id. ¶ 14.) Plaintiff states that he understood that the purpose of this meeting was to discuss the reasons Romano was rejected for the Curriculum Director position, as Plaintiff was on the committee that interviewed Romano for the job. (Id.) Plaintiff claims that he received confirmation from the Board that it would hold his comments "strictly confidential." (Id. ¶ 15.) Plaintiff states that he then truthfully answered questions about Romano's prior candidacy for the Curriculum Director position. (Id. ¶ 16.) For example, Plaintiff asserts that he explained that Romano was evasive when asked why he left his prior position as Assistant Superintendent with the Town of Milburn, and that members of the interview committee knew that many parents and officials in Millburn demanded that Romano leave. (Id. ¶ 18.) Plaintiff also states that he shared comments that he heard from others in the education community who opined that Romano was "vindictive," "difficult to work with," "not to be trusted," "a climber," and someone who would "stab you in the back." (Id. ¶ 19.)

Plaintiff states that contrary to the Board's assurances, his comments were leaked to Romano by various Board Members, including Margaret Bennett. (Id. ¶ 20.) Plaintiff asserts that at the beginning of the 2010-2011 school year, he was informed by Business Administrator Michael Solokas and then Board Secretary Fran Syracuse that during the summer of 2010, while the teachers in the District were on summer leave, Romano used threats and intimidation to cause several staff members to involuntarily meet with him in his office. (Id. ¶ 21.) Plaintiff states that

2

these teachers included Dan Hoerner and Linda Leader, and that the purpose of the meeting was to target Plaintiff and attempt to collect negative statement about him. (Id.) Plaintiff claims that Syracuse informed him that after Romano collected the statements, he manipulated and enhanced them, and then broadcasted them to teachers, administrators, and Board Members of the District. (Id. ¶ 22.) Plaintiff also alleges that Syracuse told him that many staff members cooperated with Romano because they felt "bullied" and feared retaliation. (Id. ¶ 23.)

Plaintiff claims that in January 2011, Romano forced the then Middle School Principal, Marco Cera, to resign. (Id. ¶ 26). Plaintiff states that Barbara Capozzi, a former Board Trustee, informed Plaintiff that immediately after Cera's resignation, during a closed session meeting of the Board, Romano stated, in substance, that "he also was going to get rid of [Plaintiff]." (Id. ¶ 26.) Plaintiff also claims that Board Member Christine Christopoul told him to "watch [his] back," because Romano was going to come after him. (Id.)

Plaintiff states that in February 2011, during a public meeting open to Franklin Lakes residents, Romano gave a presentation that included recommendations for redistricting. (Id. ¶ 27.) A week prior to Romano's presentation, Plaintiff states that he conducted an informational meeting for Woodside parents and explained to them through a PowerPoint presentation the negative consequences that would result from redistricting, such as students having to walk across busy streets to attend their new schools. (Id. ¶¶ 27, 30.) Plaintiff claims that Romano, Christopoul, Bennett, and Board Member Schwartz appeared at his presentation unannounced and chastised him in front of the parents. (Id. ¶ 31.) Plaintiff alleges that thereafter, for the next several months, Romano "doubled his efforts" towards finding a way to get rid of Plaintiff. (Id. ¶ 34.)

By a memorandum dated June 29, 2012, Marie Warnke, Grievance Chair of the FLEA,

sent Romano a "Level 2" grievance against Plaintiff (the "Grievance"), citing unprofessional conduct. (Id. ¶ 40.) After the Grievance was filed, Luciano, President of the FLEA, notified the Staff of the Grievance by email that they would be required to meet and speak with Romano about the claims against Plaintiff. (Id. ¶ 37.) At the end of the email, Luciano wrote that she "wanted [Plaintiff] to know that no one is coming forward voluntarily, but is being forced into this by me." (ECF No, 30, Ex. B.)  Plaintiff states that he has since been informed by former members of the teaching staff that Romano was out to get him and that Romano and Luciano generated complaints and poor comments about him when necessary. (Am. Compl. ¶ 39.) Further, Plaintiff claims that although the Grievance was allegedly created on behalf of all Woodside staff members, numerous members subsequently made statements to the contrary. (ECF No. 30, Ex. D-E.) For example, on July 9, 2012, Noelle Salzano, a member of the Woodside staff, wrote an email to Luciano expressing anger that the Grievance stated that it was on behalf of all staff. (Id., Ex. D.) Additionally, on August 10, 2012, numerous Woodside staff members wrote a letter to Romano expressing their desire to retain Plaintiff as Principal. (Id., Ex. E.)

Plaintiff asserts that each Defendant allowed him to act to his detriment upon the belief that the Grievance was real, when in reality, it was fraudulent. (Am. Compl. ¶ 51-52.) Plaintiff further states that Defendants used the Grievance as pretext to threaten him with legal actions that would harm his career. (Id. ¶ 58.) For example, in a letter dated August 8, 2012, the Board, through its counsel, informed Plaintiff that if he did not accept the Board's settlement offer, tenure charges would likely be filed against him. (ECF No. 30, Ex. F.) Plaintiff also states that during summer 2012, Romano told him that the charges "weren't going away," and that if Plaintiff did not take action he would lose his job. (Am. Compl. ¶ 61). Plaintiff asserts that in

4

September and October of 2012, after he submitted his resignation, Salzano informed him that the Grievance was never presented to the Grievance Committee and was never voted upon. (Id. ¶ 53.)

Plaintiff further claims that each Defendant allowed him to sign a separation agreement, a resignation letter, and a release of claims (collectively the "Separation Agreement"), which relinquished his tenure, even though they knew the Grievance was invalid. (Id. ¶¶ 66, 74.) Plaintiff contends that Kathie Schwartz, Board President, "literally cried to [him] that he should not have to go but Romano could not be stopped." (Id. ¶ 67.) Plaintiff also asserts that Schwartz told him that she could not help him fights the charges in public because "Romano and the Board's counsel were too strong." (Id. ¶ 68).

Plaintiff states that his counsel at the time failed to inform him that the Grievance had not been properly voted upon and that if he chose to challenge the Grievance, any suspension without pay would only last 120 days, at which point his pay would be reinstated until an investigation was completed. (Id. ¶ 78.) Plaintiff further contends that his counsel failed to notice that the Grievance itself was invalid in that many of the alleged complaints against Plaintiff were greater than thirty days old, and were therefore deemed waived pursuant to Article VI, Section E of the contract addressing the procedure for Grievances. (Id. ¶ 79.) Plaintiff claims that he had no practical choice but to sign the Separation Agreement, and that he would not have done so without the misrepresentations made by Defendants. (Id. ¶¶ 81-82.)

The Separation Agreement contains a confidentiality and non-interference provision, which states that the parties are not to discuss or communicate with anyone its terms. (ECF No. 30, Ex H ¶ 7.) The Separation Agreement also states that it will be rendered void if the Board does not fulfill its terms. (ECF No. 30, Ex H ¶ 12.) Plaintiff claims that following the execution

of the Separation Agreement, the Board publicly released information that Plaintiff would no longer be Principal of Woodside. (Am. Compl. ¶ 104.) Plaintiff asserts that due to the public outrage surrounding the way he was treated, Romano and certain Board members made public statements defaming and slandering Plaintiff in an attempt to defend themselves. (Id. ¶ 106-08.) For example, Plaintiff states that he was informed by two individuals that at a Franklin Lakes Republican Meeting in Fall 2012, Board Member James Martino publicly stated that "[p]aying off [Plaintiff] was the best $150 grand we ever spent" and "I know things you don't know." (Id. ¶ 110.) Bennett also purportedly stated at the same meeting that Plaintiff's office was "used as a bedroom." (Id.) Plaintiff contends that these statements violated the confidentiality and non-interference provision of the Separation Agreement. (Id. ¶ 109.)

On or about October 26, 2012, Plaintiff filed a lawsuit in the Superior Court of New Jersey against the Board and Romano. (Id. ¶ 116.) Plaintiff states the he voluntarily withdrew this lawsuit, without prejudice, in order to file an application of employment for his prior position as Principal, which was still open. (Id. ¶ 117.) Plaintiff asserts that the Board did not respond to his application and that he was not provided an interview. (Id. ¶ 119.) Plaintiff also states that Romano took affirmative actions to prevent the Board from considering Plaintiff's application, and contends that he was informed that Romano publicly declared to the Board that under "no circumstances" would he agree to allow Plaintiff to regain his position. (Id. ¶¶ 124-25.)

Finally, Plaintiff states that Solokas and counsel for the Board participated in a November 13, 2013 telephone hearing regarding the appeal of the denial of Plaintiff's unemployment benefits. (Id. ¶ 127.) Plaintiff contends that during the hearing, statements were made regarding the charges brought against him, and that such statements violated the Separation Agreement. (Id. ¶¶ 129-30.)

Plaintiff filed a five-count complaint in the Superior Court of New Jersey on March 20,

2013. (ECF No. 1, Ex. 1.) Count one asserted a fraudulent inducement claim. Count two asserted a breach of contract claim. Count three asserted a tortious interference claim. Count four asserted a claim for a violation of the Tenure Employee's Hearing Law, N.J.S.A. § 18A:6-10-1, et seq. ("TEHL"). Count five asserted a claim for retaliation under the First Amendment. On May 30, 2013, Romano removed the case to federal court. (ECF No. 1.) Romano and the Board then filed motions to dismiss on June 18, 2013 and June 19, 2013, respectively. (ECF Nos. 5-6.) Plaintiff filed a cross-motion to amend/correct the complaint on December 10, 2013. (ECF No. 17.) On March 26, 2014, this Court granted in part and denied in part the motions to dismiss, and granted in part and denied in part Plaintiff's cross-motion to amend. (ECF No. 28.) Specifically, this Court: (i) dismissed Plaintiff's fraudulent inducement claim without prejudice, (ii) dismissed Plaintiff's breach of contract claim without prejudice, (iii) dismissed Plaintiff's tortious interference claim with prejudice, (iv) dismissed Plaintiff's TEHL claim without prejudice, and (v) dismissed Plaintiff's First Amendment retaliation claim without prejudice as to the Board. (Id. at 17.) This Court also allowed Plaintiff to add the FLEA, Luciano, and Christopoul to count four,[1] and add a sixth claim for a freedom of speech violation under the New Jersey Civil Rights Act ("NJCRA") against Romano, Christopoul, Luciano, and the FLEA. (Id. at 16.) Further, this Court allowed Plaintiff to assert a claim for a freedom of speech violation under the NJCRA against the Board if Plaintiff fixed his deficiencies in count five against the Board. (Id.)

Plaintiff filed an Amended Complaint on May 9, 2014. (ECF No. 30.) Romano filed a Motion to Dismiss on June 4, 2014. (ECF No. 36.) The Board filed a Motion to Dismiss on June 6, 2014. (ECF No. 39.) The FLEA and Luciano filed a Motion to Dismiss on June 20, 2014. (ECF No. 42.) Plaintiff filed an Opposition to Romano's Motion and the Board's Motion on July 7, 2014.

---

[1] Plaintiff ultimately did not add Christopoul to his Amended Complaint.

(ECF No. 45.) Romano and the Board filed Replies on July 14, 2014. (ECF Nos. 46-47.)  That same day, the FLEA and Luciano curiously submitted a letter stating that it joined in Romano's and the Board's replies, even though Plaintiff's July 7, 2014 Opposition did not pertain to the FLEA and Luciano. (ECF No. 48.) Plaintiff filed an Opposition against the FLEA and Luciano on July 21, 2014. (ECF No. 50.)

## II.    STANDARD OF REVIEW

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.  Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.

## III.    DISCUSSION

### A. Count One

Count one alleges that Defendants fraudulently induced Plaintiff to execute the Separation Agreement and resign from his position as Principal.

To state a claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must establish: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other

person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."
Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). In addition, Federal Rule of
Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances
constituting fraud or mistake shall be stated with particularity." The purpose of the heightened
pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with
sufficient particularity to place the defendant on notice of the precise misconduct with which it is
charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also Seville Indus.
Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this
heightened standard, the plaintiff must plead or allege the date, time and place of the alleged
fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."
Frederico, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations
and what specific misrepresentations were made. See, e.g., Frederico v. Home Depot, No. 05–
5579, 2006 WL 624901, at *2 (D.N.J. Mar. 10, 2006).

### i. The FLEA and Luciano

In their Motion, the FLEA and Luciano rely solely on the arguments made in the Board's
Motion, even though the Amended Complaint contains a number of allegations that are unique to
the FLEA and Luciano. This Court finds that these allegations state a claim for fraudulent
misrepresentation.

The Grievance sent to Plaintiff stated the following: "This is a grievance filed by the
[FLEA] on behalf of members at [Woodside] . . . . The [FLEA] is citing unprofessional conduct
by [Plaintiff] toward *all FLEA members* who are employed at [Woodside]." (ECF No. 30, Ex. C.
(emphasis added)). However, while the Grievance indicates that it was filed on behalf of all
Woodside teachers, Plaintiff subsequently found out that a number of teachers were unaware of

9

the Grievance's existence. (Am. Compl. ¶ 41-42.) For example, Plaintiff has attached to his Amended Complaint an email that Noelle Salzano, a member of the Woodside staff, wrote to Luciano after the Grievance was filed. (ECF No. 30, Ex. D.) The email states, among other things:

> I am completely disgusted with what is going on with [Plaintiff] and beyond offended that you would sent out a grievance document, which by the way you never sent to ALL [Woodside] staff but it was brought to my attention . . . that the grievance is on behalf of ALL [Woodside staff] . . . how can this be so . . . I am one of the many who do not agree with this grievance but it is listed that it is by ALL [Woodside] staff. I feel doing this grievance over the summer when most staff aren't around is very shady. I DO NOT AGREE with the grievance and I DO NOT AGREE with pushing [Plaintiff] out.

(Id.) Additionally, Plaintiff has attached a letter that thirty members of the Woodside staff sent to Romano on August 10, 2012, expressing their desire to keep Plaintiff as their Principal. (ECF No. 30, Ex. E.) Thus, Plaintiff has shown that the FLEA and Luciano did not in fact confer with all staff members before filing the Grievance, and therefore must have known that the statement in the Grievance indicating that it was on behalf of all FLEA members was false.[2] Further, Plaintiff alleges that he reasonably relied on this misrepresentation when he chose not to fight the Grievance and instead enter into the Separation Agreement with the Board. Finally, Plaintiff has alleged damages, as he claims that the misrepresentation and his subsequent reliance thereon led to the loss of his job.

Accordingly, count one may proceed against the FLEA and Luciano.

### ii. Romano

Plaintiff's Amended Complaint contains numerous allegations of misconduct against Romano. However, none of these allegations state a claim for fraudulent misrepresentation.

---

[2] While the Grievance was actually sent by Marie Warnke, Luciano is the president of the FLEA and was copied on the Grievance. Additionally, in the responsive email sent from Luciano to Salzano, Luciano indicated that she was responsible for the filing of the Grievance. (See ECF No. 30, Ex. D.)

First, Plaintiff claims that Romano bullied other teachers into making negative statements about him. Plaintiff also states that Romano "manipulated and enhanced" these statements and broadcasted them to other Woodside teachers and administrators in order to gather further negative comments. (Am. Compl. ¶¶ 21-23.) However, while these allegations suggest that Romano may have made false misrepresentations to a number of teachers and administrators, they do not show that he made any false misrepresentations to Plaintiff. Additionally, Plaintiff does not inform this Court of the content of the statements that Romano allegedly "manipulated and enhanced." This lack of detail fails to comply with the heightened pleading standard set forth in Rule 9(b), and the Court previously dismissed Plaintiff's fraudulent misrepresentation claim for this reason. (See ECF No. 30 at 8.)  Finally, even if these allegations did set forth a misrepresentation made by Romano to Plaintiff, Plaintiff contends he was alerted of Romano's wrongdoings in the beginning of the 2010-2011 school year by Fran Syracuse, the Board Secretary at the time. Plaintiff's admission that he was told that Romano was bullying others in order to collect negative statements against him weighs against his assertion that he later reasonably relied on the veracity of such statements. See Golden v. Nw. Mut. Life Ins. Co., 551 A.2d 1009, 1014 (N.J. Super. Ct. App. Div. 1988) ("A false representation made to a person who knows it to be false is not in legal estimation a fraud.").

Second, Plaintiff asserts that Romano knew that the Grievance was "invalid" because Romano was informed by letter of the Woodside members who objected to the Grievance and because he had orchestrated many of the complaints within the Grievance. However, Plaintiff again does not point to a single statement allegedly orchestrated by Romano, and he does not contend that Romano ever informed him that the Grievance had been properly voted upon.

Finally, the Amended Complaint states that Romano communicated the following to

Plaintiff: (i) that the charges "[weren't] going away," (ii) that "there [was] a vote of no confidence" coming for Plaintiff, and (iii) that if Plaintiff attempted to fight the Grievance, the Board would take legal action to have him fired for cause. (Am. Compl. ¶¶ 76, 139.) However, Plaintiff's own allegations that these threats were untrue does not plausibly demonstrate that they were in fact false and that Romano knew they were false.

Accordingly, count one is dismissed *with prejudice* as to Romano.

### iii.   The Board

For similar reasons as with Romano, Plaintiff's fraudulent inducement claim against the Board must be dismissed. Plaintiff asserts that the Board knew that the Grievance was invalid and cooperated and conspired with Romano to intimidate Woodside staff members into making statements about Plaintiff. However, as with Romano, Plaintiff does not state that the Board informed him that the Grievance had been properly voted upon. Further, Plaintiff does not provide any detail as to how the Board allegedly cooperated and conspired with Romano, and does not explain which statements were purportedly fabricated or obtained through coercion.

Plaintiff also asserts that the Board "led [him] to believe that he faced discipline stricter tha[n] that even sought in the fraudulent Grievance and, in fact, faced the possibility of losing his employment and tenure." (Id. ¶ 140.) However, as with Romano, Plaintiff does not set forth any facts to show that these were false threats that the Board did not intend to act upon.

Accordingly, count one is dismissed *with prejudice* as to the Board.

## B.  Count Two

Count two alleges a breach of contract claim against the Board. "A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own

12

contractual duties." <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

     Here, Plaintiff identifies the confidentiality and non-interference provision of the Separation Agreement as the basis of this claim, which provides:

> The parties agree that neither will malign, disturb or interfere with the other in any manner whatsoever. Each shall be free from interference, direct or indirect, by the other and neither shall discuss with, disclose to or communicate with anyone, the terms of this Separation Agreement, except their attorneys or accountants who shall hold such communication as confidential, or as may be required by law.

(ECF No. 30, Ex H ¶ 7.) Plaintiff also alleges that Board Member James Martino breached this provision when he publicly stated at a meeting that "[p]aying off [Plaintiff] was the best $150 grand we ever spent." (Am. Compl. ¶ 110.) Plaintiff does not, however, set forth facts that establish the requisite element of damages. Plaintiff states that he "has suffered, and continues to suffer, economic harm and harm to his professional reputation in the education community" as a result of the breach. (<u>Id.</u> ¶ 147.) However, "[d]amages claimed in a breach of contract action must be reasonably certain and not speculative." <u>Horton v. Ross Univ. Sch. of Med.</u>, No. 04-5658, 2006 WL 1128705, at *9 (D.N.J. Mar. 30, 2006) (citation omitted). Here, Plaintiff does not allege that he was denied a job opportunity due to the breach, nor does he provide the Court with any other specific instance of harm. Therefore, although Plaintiff has established both a contract and a breach of that contract, his claim cannot survive, as this Court "shall not speculate about what damage might have resulted from the breach." <u>Id.</u>; see <u>also Khrakovskiy v. Denise</u>, No. 06-1033, 2009 WL 3380326, at *10 (D.N.J. Oct. 19, 2009) (finding that the elements of damages was not met because the party "fail[ed] to present any evidence of damages beyond . . . bald conclusory statements"). [3]

---

[3] Neither count two nor Plaintiff's Opposition mention Plaintiff's allegations that the Board made statements about the Grievance during a telephone hearing regarding Plaintiff's appeal of his unemployment benefits. However, this

This Court also notes that with respect to element four, the Board points to the fact that Plaintiff alleges that he learned the Grievance was false only after speaking to members of the Grievance Committee. Thus, according to the Board, Plaintiff has shown that he disregarded the same provision of the Separation Agreement that he claims the Board violated. Because Plaintiff has failed to plead damages, this Court declines to consider this argument at this time.

Accordingly, count two of the Complaint is dismissed *without prejudice*. Plaintiff is allowed to amend this claim in order to assert damages with the requisite level of specificity.

## C.  Count Three

Count three asserts tortious interference with contractual relations and prospective economic advantage against all Defendants. In its prior opinion, this Court dismissed count three *with prejudice* because Plaintiff did not file a timely notice of claim. (See ECF No. 28 at 5-6.) Accordingly, Plaintiff is barred from asserting count three in his Amended Complaint against all Defendants.[4]

## D.  Count Four

Count four alleges that the Board and the FLEA violated the TEHL by publicly discussing the issues surrounding Plaintiff's performance as Principal. This statute provides, in part, that "[t]he consideration and actions of the board as to any charge shall not take place at a public meeting." N.J.S.A. 18A:6-11. The Board and the FLEA assert that this statute only applies to tenure charges. Plaintiff does not dispute this argument in his Opposition. While the statute does not expressly state that it only applies to tenure charges, it is clear from a reading of its

---

Court notes that even if count two were premised on these allegations, Plaintiff does not allege that he was damaged by these statements.

[4] The Court's dismissal technically only applied to Romano and the Board, as the FLEA and Luciano were not yet parties to this case. However, the same reasoning this Court used to dismiss count three against Romano and the Board also applies to the FLEA and Luciano.

14

application by New Jersey courts that the Board and the FLEA are correct. See, e.g., In re Young, 995 A.2d 826, 829 (N.J. 2010) ("On October 11, 2007, the District filed tenure charges against [a teacher] with the Department of Education . . . under the [TEHL]."); In re Shinkle, No. A-2286-04T2, 2006 WL 1041986, at *1 (N.J. Super. Ct. App. Div. Apr. 21, 2006) ("On November 25, 1997, [the District], filed and served [a teacher] with tenure charges alleging unbecoming conduct and a pattern of conduct unbecoming a teacher . . . . On December 22, 1997, the . . . District certified the charges to the Commissioner pursuant to [the TEHL] . . . ."); Williams v. Bd. of Educ. of Atl. City Pub. Sch., 747 A.2d 809, 812 (N.J. Super. Ct. App. Div. 2000) ("The tenure charges were . . . filed with the Board's secretary as required by [the TEHL] . . . ."); Slater v. Bd. of Educ. of Ramapo-Indian Hills Reg'l High Sch. Dist., 568 A.2d 109, 110 (N.J. Super. Ct. App. Div. 1989) (stating that tenure charges must be dealt with in accordance with the TEHL). It is clear that no tenure charges were filed in the present case, as Plaintiff states in his Amended Complaint that "[The Board], through its Counsel, threatened Plaintiff with loss of employment and tenure charges if [Plaintiff] did not agree to the [Separation Agreement]." (Am. Compl. ¶ 62.)

Accordingly, count four is dismissed *with prejudice*.

**E.   Count Five**

Count five alleges that Romano and the Board Count violated the First Amendment by retaliating against Plaintiff for engaging in free speech concerning Romano's proposal for school redistricting.

**i.   Whether the Release of Claims Bars Count Five**

The Separation Agreement signed by Plaintiff contains a release of claims provision which provides:

> I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened up to now. . . .

(ECF No, 30, Ex. H at 6.) In its prior opinion, the Court concluded that this provision bars count five against the Board, as count five relates to conduct that occurred *prior* to the execution of the release of claims, and thus falls within the scope of the language "anything which has happened up to now." [5] (ECF No. 28 at 9.) However, the Court dismissed count five *without prejudice*, finding that it could proceed if Plaintiff were able to cure the deficiencies in count one and show that the Board fraudulently induced Plaintiff into signing the Separation Agreement. (Id. at 10 n.5) As discussed above, Plaintiff has not cured the deficiencies in his fraudulent inducement claim against the Board. However, Plaintiff has stated a claim for fraudulent inducement against the FLEA and Luciano. The implications of this outcome are unclear, as the parties have not briefed the issue of whether a successful fraudulent claim against the FLEA and Luciano voids the Separation Agreement as to all Defendants. Without any input from the parties on this matter, the Court reserves ruling on this issue. Additionally, while not argued by Plaintiff, this Court acknowledges that Plaintiff has set forth facts showing that the Board breached the terms of the Separation Agreement, and paragraph 12 of the Agreement states that it is void if any of its provisions are breached. While Plaintiff's breach of contract claim is being dismissed for failure to plead damages, paragraph 12 does not state that a showing of damages is required. Accordingly, this Court will address count five on the merits.

### ii. The Merits of Count Five

---

[5] In its prior Opinion, this Court addressed the merits of count five as to Romano because Romano did not argue that the release of claims applied to him.

To state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). In its prior Opinion, this Court found that Plaintiff stated a retaliation claim against Romano. (See ECF No. 30 at 14.)  With respect to element one, Romano had argued that Plaintiff's conduct was not constitutionally protected because it fails the test set forth in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), which requires courts to "balance the first amendment interest in protecting the employee's freedom of expression against the government's interest in maintaining discipline and efficiency in the workplace." McPherson v. Rankin, 786 F.2d 1233, 1236 (5th Cir. 1986) aff'd, 483 U.S. 378 (1987). The Court rejected this argument, finding that it was premature to dismiss Plaintiff's claim based on the Pickering test. (See ECF No. 30 at 14.) The Court also rejected Romano's argument that Plaintiff did not adequately allege a retaliatory action, finding that being presented with the choice of either signing the Separation Agreement or facing termination could "deter a person of ordinary firmness from exercising his First Amendment rights." (Id. (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

In its present Motion, Romano's only argument as to the merits of count five is that Plaintiff's speech was made pursuant to his duties as a public employee, and thus is not protected under the United States Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006). The Board also makes this argument, and additionally argues that Plaintiff has not suffered a retaliatory action. As this Court already decided that Plaintiff has established a retaliatory action, and because the analysis does not change when the argument is made by the Board rather than

17

Romano, this Court will only address whether Plaintiff's claim is barred by Garcetti.

In Garcetti, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The Supreme Court further stated that "[t]he proper inquiry is a factual one," and cautioned that neither an employee's job description nor the place where the speech was made is dispositive. Id. at 420-21, 424-25.

The Amended Complaint states that the Board and Romano retaliated against Plaintiff after he "conducted an informational meeting for parents of [Woodside] and, through a power point presentation, explained to the parents what [Romano's redistricting plan] would involve and that the proposed changes would require students to cross heavily trafficked streets and would be unsafe." (Am. Compl. ¶ 30.) The Amended Complaint does not, however, state that Plaintiff conducted this meeting as a citizen rather than pursuant to his official duties as Principal of Woodside. In his Opposition, Plaintiff simply argues that this issue should not be decided at this stage of the litigation. However, even if it were premature for this Court to determine Plaintiff's status at the time of his allegedly protected speech, without *any* facts supporting the notion that his speech was made was as a citizen, Plaintiff's First Amendment claim cannot stand. See, e.g., Creasy v. Slippery Rock Area Sch. Dist., No. 12-00953, 2013 WL 549236, at *4 (W.D. Pa. Feb. 12, 2013) ("A retaliation claim will not survive a Motion to Dismiss unless the employee is able to provide facts supporting a plausible inference she that she spoke as a citizen . . . .").

Accordingly, count five is dismissed *without prejudice*.

**F. Count Six**

### i. Free Speech

Count six alleges that all Defendants violated Plaintiff's rights under the NJCRA by retaliating against him for engaging in free speech concerning Romano's proposal for school redistricting. "[T]he free speech clause of the New Jersey Constitution is generally interpreted as coextensive with the First Amendment." Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 168 (3d Cir. 2008) (internal quotations and citation omitted). As discussed above, this Court is dismissing Plaintiff's First Amendment claim in count five *without prejudice* as to Romano and the Board. Accordingly, the free speech claim in count six is also dismissed as to Romano and the Board *without prejudice*.

With respect to Luciano and the FLEA, the only argument that they make concerning the merits of count six is that because free speech under the NJCRA is interpreted in the same manner as free speech under the First Amendment, "the Amended Complaint fails to state a free speech retaliation claim under the New Jersey Constitution for the same reasons as set forth in response to Count Five." (ECF No. 42 at 21.) This argument, which was lifted straight from the Board's Motion, cannot succeed when asserted by the FLEA and Luciano, as count five is not asserted against these Defendants, nor is it mentioned in their Motion. Because, the FLEA and Luciano are asking this Court to refer to arguments that they have not made, this Court will not dismiss the free speech claim in count six against these Defendants.

Accordingly the free speech claim in count six may proceed against the FLEA and Luciano.

### ii. Substantive and Procedural Due Process

Count six also alleges that all Defendants violated Plaintiff's substantive and procedural

due process rights under the NJCRA. However, this Court expressly denied Plaintiff's request to add such claims to the Amended Complaint in its prior opinion. (See ECF No. 30 at 16.)

Accordingly, the substantive and procedural due process claims in count six are dismissed *with prejudice* as to all Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Romano's Motion to Dismiss is **granted**, the Board's Motion to dismiss is **granted**, and the FLEA and Luciano's Motion is **granted in part and denied in part**. Count one is dismissed *with prejudice* as to Romano and the Board. Count one may proceed against the FLEA and Luciano. Count two is dismissed *without prejudice*. Count three is dismissed *with prejudice*. Count four is dismissed *with prejudice*. Count five is dismissed *without prejudice*. The free speech claim in count six is dismissed *without prejudice* as to Romano and the Board. The free speech claim in count six may proceed against the FLEA and Luciano. The substantive and procedural due process claims in count six are dismissed *with prejudice*.

Plaintiff may filed a Second Amended Complaint within **30 days** of the date of the accompanying Order to cure the pleading deficiencies and to include those particular amendments discussed above. Plaintiff's failure to do so may result in dismissal of counts two, five, and the free speech claim in count six (as to Romano and the Board) with prejudice upon application by the Defendants.

An appropriate order follows this Opinion.

Jose L. Linares, U.S.D.J.

Date:        July 31, 2014
Original:    Clerk's Office
cc:          Hon. Joseph A. Dickson U.S.M.J.

20

All Counsel of Record
File