<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOMINICK D. ROTANTE,<br><br>               Plaintiff,<br><br>v.<br><br>FRANKLIN LAKES BOARD OF<br>EDUCATION, et al.,<br><br>               Defendants. | Civil Action No. 13-3380 (JLL) (JAD)<br><br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court upon the Motions of i) Frank Romano III ("Romano") (ECF No. 58); ii) the Franklin Lakes Board of Education (the "Board") (ECF No. 57); and iii) the Franklin Lakes Education Association (the "FLEA") and Donna Luciano (ECF No. 59) to Dismiss the Second Amended Complaint ("Complaint" or "SAC") (ECF No. 53) of Plaintiff Dominick D. Rotante ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to Defendants' Motions, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. Based on the following and for the reasons expressed herein, Romano's Motion to Dismiss is **granted**, the Board's Motion to dismiss is **granted**, and the FLEA and Luciano's Motion is **granted**.

## I.     BACKGROUND[1]

Plaintiff is the former Principal of the Woodside Avenue Elementary School

---

[1] The following facts are taken solely from Plaintiff's Second Amended Complaint and are taken as true solely for the purpose of this motion.

("Woodside") located in Franklin Lakes, New Jersey. (SAC at ¶ 2.) Woodside is part of the

Franklin Lakes School District (the "District"). (*Id.*) Romano has been the Superintendent of the

schools in the District since April 2010. (*Id.* ¶ 10.)

   Immediately after Romano was hired, during a Board meeting, Plaintiff informed Board

Members that Romano was denied for a position as Curriculum Director of the District about

two years earlier. (*Id.* ¶ 12.) After making this disclosure, Plaintiff was asked to attend another

meeting with the Board, this time with Dr. John Caliso, Special Education Director, and Helen

Attenello, another Principal within the District in attendance. (*Id.* ¶ 14.) Plaintiff understood that

the purpose of this meeting was to discuss the reasons Romano was rejected for the Curriculum

Director position, as Plaintiff was on the committee that interviewed Romano for the job. (*Id.*)

Plaintiff received confirmation from the Board that it would hold his comments "strictly

confidential." (*Id.* ¶ 15.) Plaintiff then truthfully answered questions about Romano's prior

candidacy for the Curriculum Director position. (*Id.* ¶ 16.) For example, Plaintiff explained that

Romano was evasive when asked why he left his prior position as Assistant Superintendent with

the Town of Milburn, and that members of the interview committee knew that many parents and

officials in Millburn demanded that Romano leave. (*Id.* ¶ 18.) Plaintiff also shared comments

that he heard from others in the education community who opined that Romano was

"vindictive," "difficult to work with," "not to be trusted," "a climber," and someone who would

"stab you in the back." (*Id.* ¶ 19.)

   Plaintiff states that contrary to the Board's assurances, his comments were leaked to

Romano by various Board Members, including Margaret Bennett. (*Id.* ¶ 20.) At the beginning of

the 2010-2011 school year, Plaintiff was informed by Business Administrator Michael Solokas

and then Board Secretary Fran Syracuse that during the summer of 2010, while the teachers in

the District were on summer leave, Romano used threats and intimidation to cause several staff members to involuntarily meet with him in his office. (*Id.* ¶ 21.) Plaintiff states that these teachers included Dan Hoerner and Linda Leader, and that the purpose of the meeting was to target Plaintiff and attempt to collect negative statement about him. (*Id.*) Syracuse then informed Plaintiff that after Romano collected the statements, he manipulated and enhanced them, and then broadcasted them to teachers, administrators, and Board Members of the District. (*Id.* ¶ 22.) Plaintiff also alleges that Syracuse told him that many staff members cooperated with Romano because they felt "bullied" and feared retaliation. (*Id.* ¶ 23.)

In January 2011, Romano forced the then Middle School Principal, Marco Cera, to resign. (*Id.* ¶ 26). Barbara Capozzi, a former Board Trustee, informed Plaintiff that immediately after Cera's resignation, during a closed session meeting of the Board, Romano stated, in substance, that "he also was going to get rid of [Plaintiff]." (*Id.*) Plaintiff claims that Board Member Christine Christopoul told him to "watch [his] back," because Romano was going to come after him. (*Id.*)

In February 2011, during a public meeting open to Franklin Lakes residents, Romano gave a presentation that included recommendations for redistricting. (*Id.* ¶ 27.) Shortly before Romano's presentation, certain parents approached Plaintiff with many questions regarding the redistricting. (*Id.* ¶ 30.) Thereafter, Plaintiff held a "discussion," with approximately thirty individuals in attendance, to discuss Plaintiff's thoughts and opinions regarding the proposed redistricting plan and its impact. (*Id.* ¶¶ 30-38.) Romano, Christopoul, and Board Members Bennett and Schwartz appeared at his presentation unannounced and chastised Plaintiff in front of the parents. (*Id.* ¶ 39.) Thereafter, for the next several months, Romano "doubled his efforts" towards finding a way to get rid of Plaintiff. (*Id.* ¶ 41.)

3

By a memorandum dated June 29, 2012, Marie Warnke, Grievance Chair of the FLEA, sent Romano a "Level 2" grievance against Plaintiff (the "Grievance"), citing unprofessional conduct. (*Id.* ¶ 48.) After the Grievance was filed, Luciano, President of the FLEA, notified the Staff of the Grievance by email that they would be required to meet and speak with Romano about the claims against Plaintiff. (*Id.* ¶ 45.) At the end of the email, Luciano wrote that "no one is coming forward voluntarily," but is "being forced into this by me." (*Id.* ¶ 46) Plaintiff has since been informed by former members of the teaching staff that Romano was out to get him and that Romano and Luciano generated complaints and poor comments about him when necessary. (*Id.* ¶ 47.) Further, Plaintiff claims that although the Grievance was allegedly created on behalf of all Woodside staff members, numerous members subsequently made statements to the contrary. (*Id.* ¶¶ 49-50.) For example, on July 9, 2012, Noelle Salzano, a member of the Woodside staff, wrote an email to Luciano expressing anger that the Grievance stated that it was on behalf of all staff. (*Id.* ¶ 52.) Additionally, on August 10, 2012, numerous Woodside staff members wrote a letter to Romano expressing their desire to retain Plaintiff as Principal. (*Id.* ¶ 53.)

Plaintiff asserts that each Defendant allowed him to act to his detriment upon the belief that the Grievance was real, when in reality, it was fraudulent. (*Id.* ¶¶ 54-65.) Plaintiff further states that Defendants used the Grievance as pretext to threaten him with legal actions that would harm his career. (*Id.* ¶ 66.) For example, in a letter dated August 8, 2012, the Board, through its counsel, informed Plaintiff that if he did not accept the Board's settlement offer, tenure charges would likely be filed against him. (*Id.* ¶ 67.) Also, during summer 2012, Romano told Plaintiff that the charges "weren't going away," and that if Plaintiff did not take action he would lose his job. (*Id.* ¶ 69). In September and October of 2012, after Plaintiff submitted his resignation,

Salzano informed Plaintiff that the Grievance was never presented to the Grievance Committee and was never voted upon. (*Id.* ¶ 61.)

Plaintiff further claims that each Defendant allowed him to sign a separation agreement, a resignation letter, and a release of claims (collectively the "Separation Agreement" or the "Agreement"), which relinquished his tenure, even though they knew the Grievance was invalid. (*Id.* ¶¶ 84-96.) Plaintiff contends that Kathie Schwartz, Board President, "literally cried to [him] that he should not have to go but Romano could not be stopped." (*Id.* ¶ 75.) Plaintiff also asserts that Schwartz told him that she could not help him fights the charges in public because "Romano and the Board's counsel were too strong." (*Id.* ¶ 76.)

Plaintiff's counsel at the time failed to inform Plaintiff that the Grievance had not been properly voted upon and that if Plaintiff chose to challenge the Grievance, any suspension without pay would only last 120 days, at which point his pay would be reinstated until an investigation was completed. (*Id.* ¶ 86.) Plaintiff' counsel failed to notice that the Grievance itself was invalid in that many of the alleged complaints against Plaintiff were greater than thirty days old, and were therefore deemed waived pursuant to Article VI, Section E of the contract addressing the procedure for Grievances. (*Id.* ¶ 87.)  Plaintiff had no practical choice but to sign the Separation Agreement, and that Plaintiff would not have done so without the misrepresentations made by Defendants. (*Id.* ¶¶ 89-90.)

The Separation Agreement contains a confidentiality and non-interference provision, which states that the parties are not to discuss or communicate with anyone its terms. (ECF No. 53, Ex H ¶ 7.) The Separation Agreement also states that it will be rendered void if the Board does not fulfill its terms. (ECF No. 53, Ex. H ¶ 12.) Following the execution of the Separation Agreement, the Board publicly released information that Plaintiff would no longer be Principal

of Woodside. (SAC ¶ 112.) Due to the public outrage surrounding the way Plaintiff was treated, Romano and certain Board members made public statements defaming and slandering Plaintiff in an attempt to defend themselves. (*Id.* ¶ 115-116.) For example, Plaintiff was informed by two individuals that at a Franklin Lakes Republican Meeting in Fall 2012, Board Member James Martino publicly stated that "[p]aying off [Plaintiff] was the best $150 grand we ever spent" and "I know things you don't know." (*Id.* ¶ 118.) Bennett also purportedly stated at the same meeting that Plaintiff's office was "used as a bedroom." (*Id.*) Plaintiff contends that these statements violated the confidentiality and non-interference provision of the Separation Agreement. (*Id.* ¶ 119.)

On or about October 26, 2012, Plaintiff filed a lawsuit in the Superior Court of New Jersey against the Board and Romano. (*Id.* ¶ 124.) Plaintiff voluntarily withdrew this lawsuit, without prejudice, in order to file an application of employment for his prior position as Principal, which was still open. (*Id.* ¶ 125.) The Board did not respond to his application and Plaintiff was not provided an interview. (*Id.* ¶ 127.) Romano took affirmative actions to prevent the Board from considering Plaintiff's application, and Plaintiff was informed that Romano publicly declared to the Board that under "no circumstances" would he agree to allow Plaintiff to regain his position. (*Id.* ¶¶ 132-133.)

Finally, Solokas and counsel for the Board participated in a November 13, 2013 telephone hearing regarding the appeal of the denial of Plaintiff's unemployment benefits. (*Id.* ¶ 135.) During the hearing, statements were made regarding the charges brought against Plaintiff, and such statements violated the Separation Agreement. (*Id.* ¶¶ 137-38.) Then, in May 2013, Plaintiff was contacted by the Superintendent of River Edge, who informed Plaintiff that the Town has just completed an unsuccessful search for candidates for the position of Elementary Principal. (*Id.* ¶

141). The Superintendent then asked Plaintiff if he would like to interview for the position. (*Id.*) After interviewing, Plaintiff learned that the interview went well, but River Edge could not offer Plaintiff the job because members of the Cresskill School Board labeled Plaintiff as a "problem". (*Id.* ¶ 145.) Plaintiff was also denied a position after interviewing with the Riverdale School system. (*Id.* ¶¶ 146, 149.) Finally, in May 2014, Plaintiff interviewed for the position of Assistant Principle Elementary, in the Mamaroneck School System, but was informed by Paul Arilotta, then Human Resources Interim, that the Board members told Arilotta that he should not hire Plaintiff. (*Id.* ¶¶ 150-152.)

## II.     STANDARD OF REVIEW

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.

## III.     DISCUSSION

### A.  The Motions Before the Court

#### 1. Franklin Lakes Board of Education

The Franklin Lakes Board of Education (the "Board") argue that the Plaintiff's claims should be dismissed on the following grounds: (1) The Court previously dismissed Plaintiff's fraudulent claim against the Board with prejudice, thus, Plaintiff is barred from asserting this claim in his Second Amended Complaint; (2) Plaintiff has failed to adequately plead a breach of contract claim because the damages now asserted are bald and conclusory statements and Plaintiff has failed to perform his own contractual duties under the separation agreement; (3) The executed release bars consideration of Count Four, as Plaintiff's fraudulent inducement claim against the Board was dismissed with prejudice and the outcome of the fraudulent inducement claim against the association and Luciano have no effect on the board, or alternatively the Second Amended Complaint fails to state a claim of first amendment retaliation; and (4) The executed release bars consideration of Count Five, as Plaintiff's fraudulent inducement claim against the Board was dismissed with prejudice and the outcome of the fraudulent inducement claim against the Association and Luciano have no effect on the Board or alternatively the Second Amended Complaint fails to state a claim under the New Jersey Civil Rights Act.

**2. Frank Romano**

Defendant Frank Romano ("Romano") argues that dismissal is warranted on the following grounds: (1) Plaintiff's fraudulent inducement and due process claims against Romano were previously dismissed with prejudice and therefore barred; (2) Plaintiff's free speech claims against Romano are barred by the Separation Agreement which the Board entered into in good faith and without knowledge of any alleged misrepresentation by FLEA of Luciano; (3) Plaintiff's free speech claims against Romano are barred by the separation agreement, which Plaintiff fails as a matter of law to demonstrate was breached or should be rescinded; and (4) Plaintiff's free speech retaliation claims in Counts Four and Five fail as a matter of law because

8

in criticizing the Board's redistricting plan the Plaintiff spoke out not as a citizen, but as a Franklin Lakes School Principal.

### 3. Franklin Lakes Education Association and Donna Luciano

Defendants Franklin Lakes Education Association ("FLEA") and Donna Luciano ("Luciano") argue that dismissal is warranted on the following grounds: (1) Plaintiff's conclusory allegation of fraud and inducement against Luciano and FLEA are devoid of merit; (2) There is no allegation that Defendants Luciano and FLEA did anything to violate Plaintiff's First Amendment Free Speech Rights or retaliate against him, therefore Count Four of the Amended Complaint should be dismissed against Luciano and FLEA; (3) Defendants Luciano and FLEA did not violate any of Plaintiff's rights under the New Jersey Civil Rights Act and Count Five of the Amended Complaint should be dismissed; and (4) Any claims made against Luciano individually, are barred by the release of claims given to employees in the settlement.

### 4. Plaintiff's Opposition

Plaintiff responds to the Defendants' motions by arguing: (1) Plaintiff has sufficiently met the pleading requirements to assert causes of actions against the Defendants; (2) The Court previously held that Plaintiff has sufficiently pleaded a claim for fraud as to Defendants FLEA and Luciano; (3) Count Two of Plaintiff's Complaint adequately pleads breach of the Separation Agreement and damages subsequent thereto; (4) Pursuant to the specific terms of the Separation Agreement, Plaintiff's resignation are void due to the Board's breach of the Agreement's confidentiality and non-interference clauses; (5) The executed release is a nullity in light of the Defendants Luciano and FLEA's fraudulent misrepresentation upon which Plaintiff properly relied when agreeing to enter into the separation agreement and release; (6) Plaintiff's free

speech and retaliation claims in Count Four are proper as Plaintiff was acting as a citizen, not an employee; and (7) For purposes of the NJCRA, the Defendants were each acting under color of law, as that phrase is interpreted under the act.

### B. Count One

To state a claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must establish: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007*); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. Mar. 10, 2006).

As expressed in the Court's previous Opinion (ECF. No. 53), Plaintiff's claims of fraud and inducement in Count One as to Romano and the Board were dismissed *with* prejudice. Moreover, the Court allowed the claims in count one to proceed against FLEA and Luciano.

Despite failing to explain why Count One continues to assert claims against Defendants that were previously dismissed with prejudice, the Court, once again, holds that the Count One, as it pertains to Romano and the Board is dismissed *with* prejudice. Count one, as to FLEA and Luciano, may proceed.

### C. Counts Two and Three

Counts two and three allege breach of contract claims against the Board. Plaintiff amended his Complaint to add a separate count for breach of contract, enforcement of contractual terms for relief against the Board. In this count, Plaintiff alleges that pursuant to the terms of the Agreement, the Agreement itself and Plaintiff's resignation are void due to the Board's breach of the Agreement's confidentiality and non-interference clauses. "A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

In its previous Opinion, the Court dismissed Count Two of the Complaint without prejudice. Plaintiff was allowed to amend his claim in order to assert damages with the requisite level of specificity.  Plaintiff has amended his Complaint to include instances where damages were suffered by him, as evidenced by paragraphs describing the multiple job opportunities he lost.  (*See* SAC ¶¶ 141-152.) However, The Board argues that Plaintiff has not met element four, by failing to allege that Plaintiff, himself, has performed his own contractual duties.

The Board argues that Plaintiff not only failed to allege that he performed his own contractual duties, but that Plaintiff also breached the confidentiality, non-interference, and

restrictive employment provisions by speaking to others and discovering that the Agreement was entered into fraudulently. Plaintiff responds by stating that it is illogical to find a breach by Plaintiff merely learning the truth about the Agreement through communications with members of the Association and staff members. Moreover, Plaintiff contends that because he alleges that the Agreement was entered into under a "fraudulent falsehood," the Agreement is voidable as to Plaintiff.

Section 164 of The Restatement (Second) of Contracts titled, "when a misrepresentation makes a contract voidable," states:

> If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction.

Restatement (Second) of Contracts § 164 (1981). Despite multiple opportunities for Plaintiff to amend his breach of contract claim properly, Plaintiff fails to provide any facts which point to the Plaintiff performing his own contractual duties. Plaintiff has failed to make any allegations as to how he continued to perform his duties under the Agreement despite the Board's breach, as required by element four in a breach of contract action. Moreover, Plaintiff fails to address the Board's argument as to why he has not alleged that he performed his contractual duties under the contract, let alone cite any authority that subscribes to his proposition that he had no duty to perform after discovering that the Agreement was entered into fraudulently. Although in his brief Plaintiff argues that the Board breached the separation agreement, Plaintiff does not point to facts in the Complaint which allege that the Board knew about FLEA and Luciano's misrepresentation nor does Plaintiff allege that the Board did not rely on the Agreement in good faith. Without these facts Plaintiff may not assert that he has the right to void the contract, as

explained above by the Restatement. Despite multiple opportunities to plead properly, Plaintiff has failed to allege that he continued to perform his own contractual duties under the Agreement or that the Agreement is voidable by Plaintiff. Therefore, counts two and three of Plaintiff's Complaint are dismissed *with prejudice*.

### D. Count Four

Count four alleges that Romano, the Board, FLEA, and Luciano violated the First Amendment by retaliating against Plaintiff for engaging in free speech concerning Romano's proposal for school redistricting. The Separation Agreement signed by Plaintiff contains a release of claims provision which provides:

> I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened up to now. . . .

(ECF No, 30, Ex. H at 6.) In a prior opinion, the Court concluded that this provision bars count five against the Board, as count five relates to conduct that occurred *prior* to the execution of the release of claims, and thus falls within the scope of the language "anything which has happened up to now." (ECF No. 28 at 9.) Additionally, as the Court stated in its previous Opinion and as discussed above, Plaintiff has not cured the deficiencies in his fraudulent inducement claim against the Board. (ECF. No. 51 at 16.)  However, Plaintiff has stated a claim for fraudulent inducement against the FLEA and Luciano that may proceed. Since the implications of this outcome were unclear, as the parties had not briefed the issue of whether a successful fraudulent claim against the FLEA and Luciano voids the Separation Agreement as to all Defendants, the Court reserved ruling on this issue. What is more, the Court dismissed count four as to Romano without prejudice in order to determine whether Plaintiff could provide facts indicating that his

13

allegedly protected speech was made as a citizen, as opposed to the Principal of Woodside. With all of the issues being fully addressed by both parties, the Court now addresses these claims.

### 1. Romano and the Board

To state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Moreover, in *Garcetti*, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The Supreme Court further stated that "[t]he proper inquiry is a factual one," and cautioned that neither an employee's job description nor the place where the speech was made is dispositive. Id. at 420-21, 424-25.

In a prior Opinion, this Court found that Plaintiff stated a retaliation claim against Romano. (*See* ECF No. 28 at 14.)  With respect to element one, Romano had argued that Plaintiff's conduct was not constitutionally protected because it fails the test set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), which requires courts to "balance the first amendment interest in protecting the employee's freedom of expression against the government's interest in maintaining discipline and efficiency in the workplace." *McPherson v. Rankin*, 786 F.2d 1233, 1236 (5th Cir. 1986) aff'd, 483 U.S. 378 (1987). The Court rejected this argument, finding that it was premature to dismiss Plaintiff's claim based on the Pickering test. (*See* ECF No. 28 at 14.) The Court also rejected Romano's argument that Plaintiff did not adequately allege a retaliatory action, finding that being presented with the choice of either signing the

Separation Agreement or facing termination could "deter a person of ordinary firmness from exercising his First Amendment rights." (*Id.* (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

In their respective motions, Romano and the Board argue that this claim is barred by the release of claims provision in the Agreement executed by Plaintiff. Romano and the Board assert that because the fraudulent inducement claim is dismissed with prejudice as to Romano and the Board, as well as the fact that Plaintiff has failed to demonstrate that the Board or Romano knew the Grievance was false or otherwise acted in bad faith when they signed the Separation Agreement, the claims cannot proceed against either party. Moreover, Romano and the Board argue that even if the release should not apply to them, the First Amendment claim must still be dismissed because Plaintiff has failed to present facts sufficient to raise a reasonable inference that he spoke as a citizen when he conducted a power point presentation for parents about Romano's redistricting plan.

Section 164 of The Restatement (Second) of Contracts titled, "when a misrepresentation makes a contract voidable," states:

> If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction.

Restatement (Second) of Contracts § 164 (1981).

As stated above and in its previous Opinion, Plaintiff may not assert a claim that Romano or the Board fraudulently induced Plaintiff to execute the Separation Agreement. However, a fraudulent inducement claim against FLEA and Luciano may proceed. In regards to the

Separation Agreement, the facts alleged by Plaintiff fail to establish that the Romano or the Board had reason to know of the fraudulent inducement made by FLEA and Luciano. Plaintiff does not state that the Board nor Romano informed him that the Grievance had been properly voted upon. Further, Plaintiff does not provide any detail as to how the Board allegedly cooperated and conspired with Romano, and does not explain which statements were purportedly fabricated or obtained through coercion. Without alleging facts that indicate Romano or the Board knew of the misrepresentation, nor facts that indicate Romano did not materially rely on the Agreement, the Court does not find that the contract is voidable by Plaintiff. Thus, the Separation Agreement is valid as to Romano and the Board and releases this claim against them. Count four as to Romano and the Board is dismissed *with prejudice*.

### 2. FLEA and Luciano

FLEA and Luciano argue that despite Plaintiff being given the opportunity to amend to include allegations that he spoke as a citizen, Plaintiff has still failed to include allegations that indicate the FLEA and Luciano interfered with Plaintiff's right to speak. Moreover, FLEA and Luciano argue that Plaintiff has failed to provide any facts indicating how they could or did retaliate against Plaintiff. Plaintiff curiously does not address these arguments in his brief, but rather focuses on his alleged speech as a citizen. The Court agrees with FLEA and Luciano.

Nowhere in the now Second Amended Complaint does Plaintiff express any of the above required elements as they pertain to FLEA and Luciano. Plaintiff does not attempt to argue in his Opposition Brief how any of facts listed in the Complaint apply to these required elements either. Most importantly, Plaintiff does not allege that FLEA and Luciano were aware of his comments about the redistricting, let alone a causal link between his speech and any alleged retaliatory action taken by FLEA and Luciano. Therefore, despite his multiple chances to amend, as well as

16

argue against dismissal, the Court finds that Count Four as to FLEA and Luciano is dismissed *with prejudice*.

### E. Count Five

Count five alleges that all Defendants violated Plaintiff's rights under the NJCRA by retaliating against him for engaging in free speech concerning Romano's proposal for school redistricting. "[T]he free speech clause of the New Jersey Constitution is generally interpreted as coextensive with the First Amendment." *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 168 (3d Cir. 2008) (internal quotations and citation omitted). As discussed above, this Court is dismissing Plaintiff's First Amendment claim in count five *with prejudice* as to Romano, the Board, FLEA, and Luciano. Accordingly, the free speech claim in count five is also dismissed as to Romano, the Board, FLEA, and Luciano *with prejudice*.

### IV. CONCLUSION

For the foregoing reasons, Romano's Motion to Dismiss is **granted**, the Board's Motion to dismiss is **granted**, and the FLEA and Luciano's Motion is **granted**. Count one is dismissed *with prejudice* as to Romano and the Board. Count one may proceed against the FLEA and Luciano. Count two is dismissed *with prejudice* as to the Board. Count three is dismissed *with prejudice* as to the Board. Count four is dismissed *with prejudice* as to all Defendants. Count five is dismissed *with prejudice* as to all Defendants.

An appropriate Order follows this Opinion.

DATE: November 20, 2014

Jose L. Linares
United States District Judge

17